UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXCEL ENERGY, INC.                                                                                          PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:98CV-713-S

CYPRUS AMAX COAL SALES CORPORATION, et al.                          DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on cross-motions of the parties for summary judgment (DNs 97; 112). This action arose from an unsuccessful bid by the plaintiff, Excel Energy, Inc. ("Excel"), for the first quarter 1994 coal supply agreement with Lafarge Corporation for its cement manufacturing plant located in Joppa, Illinois (the "Joppa contract"). Excel asserts that Cyprus Amax Coal Sales Corporation ("CACSC") and Cyprus Amax Coal Company (collectively "defendants") breached their March 1993 exclusive agency agreement with Excel and tortiously interfered with Excel's contractual relations with Lafarge. For the reasons set forth herein, the court concludes that no genuine issues of material fact exist and the defendants are entitled to summary judgment as a matter of law.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving

party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The following pertinent facts are undisputed.

From 1991 through 1993, Excel, a coal broker, had a lucrative coal supply agreement with Missouri Portland Cement Company to provide coal for its Joppa Plant. Defendant's Ex. 4 ("Ex. D 4").[1] Max Frailey, the Plant Manager for the Joppa plant, entered into the agreement on behalf of Missouri Portland Cement which yielded $28 to $32 per ton for coal supplied over the life of the agreement. Ex. D4, D5. Excel sought a two-year extension of the agreement from Max Frailey on the existing prices under the prior agreement. LeMaster Depo., Ex. PB, pp. 109-110. However, in mid-1993, the assets of Missouri Portland Cement were purchased by Lafarge, and the proposed extension never came to fruition. Jay Austin became the Director of Purchasing for Lafarge's United States Division, ultimately replacing Frailey in the purchasing of coal for the Joppa Plant. Lafarge determined to put the first quarter 1994 supply contract up for bid. Austin Depo., Ex. D6, pp. 11-19. Austin met with Frailey in June or July of 1993. Austin testified:

> ...[A]s I said, in the meeting we would have had initially, we would have talked about what they had done in the past and how we do things at Lafarge basically,...and this is the sequence of events that will follow. We'll do an RFP.[2] We'll send it out to multiple bidders. And we're going to do what is right and best interest overall for Lafarge.

---

[1] For ease of reference, exhibits will be referred to as "P. letter" or "D. #" for exhibits submitted in support of summary judgment by plaintiff or defendants, respectively.

[2] Request for Proposal (Austin Depo., p. 49, Ex. D6).

- 2 -

> The philosophy generally was let's get the lowest possible cost we can overall for Lafarge. That was our goal, you know, to be competitive. And to be competitive in that industry, the low cost producer is the guy who wins.

Austin, Depo., Ex. D6, pp. 29-31.

Earlier, on March 24, 1993, Excel entered into a contract with Cannelton Sales Company, the sales agent for Cannelton's Kanawha Division coal.[3] The agreement (hereinafter the "Cannelton-Excel Contract") provided:

> Cannelton Sales Company is pleased to grant exclusive rights for Cannelton's Kanawha Division coal to Excel Energy, Inc. for presentation to Missouri Portland Cement Plant located at Joppa, Illinois owned by Lafarge Corporation...Excel Energy, Inc. will not make any binding quotation, accept any order, or enter into any contract on behalf of Cannelton Sales Company without written approval from Cannelton Sales Company. Cannelton Sales Company and Excel Energy, Inc. have entered into a Coal Sales Agreement dated March 24, 1993 for a test order of coal to the Missouri Portland Cement Plant located at Joppa, Illinois which is covered under this letter of authorization. This authorization expires December 31, 1994...

Ex. D1.

On May 24, 1993, Amax, Inc. (parent of Cannelton Sales Company) and Cyprus Minerals Company (parent company of Cyprus Amax Coal Company and CACSC) entered into a merger agreement. Aff. of Greg A. Walker, p. 1, Ex. D8. The merger of Amax, Inc. into Cyprus Minerals Company was accomplished on November 15, 1993 with the surviving entity being renamed Cyprus Amax Minerals Company. Cannelton Sales Company continued to exist after the merger, but CACSC sold all of the coal produced by the affiliates of the newly merged company. This included both Cannelton Kanawha coal ("Kanawha coal"), and coal from the Armstrong Creek mine ("Armstrong coal") owned by affiliate Cyprus Kanawha Corporation.

The bid requests from Lafarge for the Joppa Contract went out November 18, 1993. The proposals were due December 1, 1993. Ex. D9. Austin stated that the bid requests would have gone

---

[3] Cannelton Sales Company was an affiliate of Amax Coal Industries, Inc. in March of 1993. Cannelton was a defendant in this suit, but all claims against it were dismissed by orders of the bankruptcy court in September, 1994 and this court in January, 2005. At the time of the agreement, Cannelton Sales Company had no affiliation with Cyprus Amax Coal Company or CACSC, the other defendants herein.

out to 12 to 20 bidders. Austin Depo., Ex. D6, p. 53. Both Excel and CACSC were among those potential suppliers who received bid requests.

Excel's '91-'93 contract with the Joppa Plant was to expire on December 31, 1993. Excel had not obtained a contract to extend the agreement, and Lafarge had put the Joppa Contract out for bid to other suppliers. Thus Excel was required to bid like any other potential supplier for the contract. Excel submitted its bid on November 30, 1993. It offered to supply Kanawha coal at $27.82/ton for the first quarter, or $26.90/ton for a contract for the year. Ex. D11. It contends that it submitted this price based upon an oral agreement it had reached with Cannelton Sales Company to buy Kanawha coal for $24.50/ton for the year 1994. LeMaster Depo., pp. 92-95, 108, Ex. D3.[4]

CACSC also submitted a proposal to Lafarge on November 30, 1993. It offered to supply Armstrong coal at a price of $26.00/ton for the first quarter. The cover letter to the proposal stated:

> Cyprus Amax Coal Sales Corporation on behalf of its affiliate Cyprus Kanawha Corporation is pleased to submit the attached proposal to supply coal at Lafarge Corporation's cement plant in Joppa, Illinois during the first quarter of 1994.
>
> You are probably aware of the recent merger between Cyprus Minerals Company and Amax. This coal is being offered with the understanding that Cyprus Kanawha Corporation has the right to substitute coal from any of its affiliates controlled by Cyprus Amax Coal Company provided, of course, that Lafarge Corporation agrees to the suitability of the substitute coal as a fuel. This offer is also subject to the execution of a mutually agreeable purchase order and the tonnage offered is subject to prior sale.
>
> Per your solicitation, I am enclosing a copy of typical analyses of the coal offered...

Ex. D10. On December 3, 1993, CACSC sent a cover letter and proposal to sell Kanawha coal to Excel. The letter stated:

---

[4] Cannelton Sales Company sent a written offer to Excel to sell Kanawha coal for $25 to $27/ton depending upon type. Ex. D13. William LeMaster, President of Excel, testified that he "marked up" the document, changing the prices to $24.50 and $23.50, as orally agreed. Ex. D3, pp. 93-95. He testified that a fully executed copy of the agreement existed, but apparently it has not been produced to date. However, taking the evidence in the light most favorable to the plaintiff, the court will assume, for purposes of this ruling, that Cannelton Sales Company did agree to a reduction in the price in the written offer and that Excel relied upon the price of $24.50/ton in submitting its bid to Lafarge.

- 4 -

> Per our conversation on December 1, 1993 Cyprus Amax Coal Sales Corporation on behalf of its affiliate, Cannelton Sales Company is pleased to submit the attached proposal to supply coal from its Kanawha Division to Excel Energy, Inc. for resale to Lafarge Corporation's Missouri Portland Cement Plant located at Milepost 95.3 on the Ohio River at Joppa, Illinois pursuant to the letter agreement between Cannelton Sales Company and Excel Energy dated March 24, 1993 [the Cannelton-Excel Contract].
>
> The coal offered on the attached proposal is subject to prior sale and the negotiation of a coal sales agreement...

Ex. D14. The proposal offered to sell Excel Kanawha coal for $26.00/ton for the first quarter of 1994.

The Joppa Contract was awarded to CACSC. It entered into further negotiations and ultimately reduced its price to $25.21/ton for the first quarter of 1994.

I.

Excel contends that CACSC and Cyprus Amax Coal Company are guilty of "tortious interference" with its "business contracts and business relationships." Pl. Motion for Summary Judgment, p. 14. Excel contends that because of the merger, the defendants had information about Excel's pricing and used the information to underbid Excel for the Joppa Contract.

First, Excel has pointed to no evidence that the defendants knew how Excel would bid for the contract. The Joppa Plant had a new owner, and a new coal buyer had been hired in place of Frailey. The defendants would have had no expectation as to Excel's bid strategy, as would have been possible had Frailey still been buying coal for the Joppa Plant.

Second, Excel contends that CACSC priced the Kanawha coal so high that it could not make a competitive bid. However, the facts of record belie this argument. Excel contends that it relied upon an August 1993 agreement with Cannelton Sales Company that it could purchase Kanawha coal for $24.50/ton. It submitted its bid of $27.82/ton to Lafarge on November 30, 1993. Excel did not receive the $26/ton proposal for its purchase of the Kanawha coal until December 3, 1993. Thus the fact that it received a purchase price per ton allegedly higher than that agreed upon in August

- 5 -

with Cannelton Sales Company had no impact on the bid Excel submitted to Lafarge. Further, Excel was not awarded the Joppa Contract. Therefore, the argument that a later price of $26/ton made it impossible for Excel to perform is unavailing. Excel was not required to perform because it did not get the contract award.

Third, Excel has come forward with no evidence that CACSC was precluded from responding to the bid request for the Joppa Contract.[5] CACSC bid Armstrong coal, at the required specifications, on behalf of Cyprus Kanawha Corporation. Excel's exclusive contract to supply the Joppa Plant was coming to an end. The plant had come under the control of Lafarge, an extension of the contract had been denied to Excel, and its key contact, Frailey, was no longer the coal buyer for the plant. In light of the fact that CACSC was within its right to submit its proposal, there can be no tortious interference with Excel's hoped for but as yet unrealized future business dealings with Lafarge. *See, ie.*, *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 408 (6th Cir. 1999)(*quoting, Lewis v. Bloede,* 202 F. 7, 17 (4th Cir. 1912) "[I]f the ground of complaint is that [the plaintiff] was about to make a contract, he is required to go further and show that he was not only 'about to,' but would, but for the malicious interference of defendants, have entered into the contract"); 45 A.Jur.2d Interference § 25 ("Liability for an otherwise tortious act, including interference with a contract, may be avoided by the defense of privilege. Generally, a circumstance is effective as a privilege if the defendant acts in the exercise of a right equal or superior to that of the plaintiff"). The court concludes that no genuine issue of material fact exists as to the claim for tortious interference with Excel's business relations. The defendants are entitled to summary judgment as a matter of law.

---

[5]See Section II herein for further discussion of the Cannelton-Excel Contract.

II.

Excel contends that CACSC breached the Cannelton-Excel Contract by submitting its bid to Lafarge and by delivering some quantity of Kanawha coal in fulfillment of the Joppa Contract. These contentions will be addressed seriatim.

Excel contends that CACSC breached the Cannelton-Excel Contract by bidding Kanawha coal to Lafarge.  The parties contest whether CACSC and Cyprus Amax Coal Company were successors-in-interest to the Cannelton-Excel Contract by virtue of the merger.  We need not decide this question.  On December 3, 1993, CACSC offered to sell Kanawha coal to Excel "pursuant to the letter agreement between Cannelton Sales Company and Excel Energy dated March 24, 1993."  We will assume, *arguendo*, for purposes of this decision, that CACSC was bound by the terms of the Cannelton-Excel Contract.

Excel urges that CACSC intended to bid and actually bid Kanawha coal, in violation of the Cannelton-Excel Contract.  As evidence of this proposition, Excel points to the fact that (1) the specifications for Kanawha coal and Armstrong coal were identical, (2) the December 15, 1993 purchase order from Lafarge to CACSC indicated that coal would be provided from "Cyprus Kanawha/Cannelton operation," (3) in its proposal, CACSC reserved the right to substitute coal from any of its affiliates, upon approval by Lafarge, and (4) CACSC did in fact substitute Kanawha coal for as much as one-third of the coal supplied pursuant to the Joppa Contract.

Clearly, CACSC sought the Joppa Contract for its own.  There is no reason why CACSC could not bid against Excel, as the Cannelton-Excel Contract only gave Excel the exclusive right to bid Kanawha coal.  Excel has not contended herein that the terms of the Cannelton-Excel Contract precluded CACSC could from bidding Armstrong coal on behalf of Cyprus Kanawha Corporation. Rather, it urges that CACSC actually bid Kanawha coal.

On its face, CASCS's bid is for Armstrong coal.  It is not disputed that approximately 100,000 tons of Armstrong coal were delivered under the Joppa Contract.  Excel contends that the

fact that the Armstrong coal and Kanawha coal were bid with the same specifications renders suspect the identity of the coal actually being bid by CACSC. Excel has come forward with nothing more than an argument of coincidence on this point. It has not refuted the testimony of Dan Tayloe that the specifications bid for the coal from both mines were very typical specifications for coal from the area. *See,* Tayloe Depo., p. 12.

The reservation of the right to substitute coal from other affiliates was addressed by the defendants and not refuted by Excel. The affidavit of Scott Pack, former Director of Sales from 1992 to 1994 for Cannelton, Inc., establishes that

> It is common practice in the industry for coal producers to reserve the option in their supply contracts to substitute coal meeting contract specifications from alternate sources of production, including affiliated (and even unaffiliated) producers. Indeed, in 1993, during the period in which Excel contracted with Cannelton for the purchase of Cannelton's Kanawha Division coal for presentation to the Joppa plant, Cannelton substituted about 16,000 tons of coal from Cannelton's other mines of from coal purchased from unaffiliated mines. See Exhibit B attached to this affidavit.

Ex. D1, p. 2. Thus, the evidence establishes that some substitution was made in fulfilling Excel's '91-'93 contract for the Joppa plant. Excel contends that CACSC really intended to supply Kanawha coal all along. But the Cannelton-Excel Contract granted Excel only an exclusive right to bid Kanawha coal on the Joppa Contract. It did not grant Excel an exclusive right to supply Kanawha coal to the Joppa plant. Excel exercised its exclusive right by bidding Kanawha coal. CACSC bid Armstrong coal. CACSC won, and actually supplied Armstrong coal for about two-thirds of the contract requirements. The fact that CACSC at times substituted Kanawha coal for about one-third of the contract requirements, as it was permitted to do, is not a violation of the Cannelton-Excel Contract because Excel received the benefit of its bargain when it was the only bidder to bid Kanawha coal.

The court concludes that no genuine issue of material fact exists with respect to the claim for breach of the Cannelton-Excel Contract. Despite Excel's efforts to weave a web of nefarious conduct by CACSC, the court finds nothing more than competitive business strategy at work. Excel

laments that the defendants were intent upon "cut[ting] out the middle man," when they chose to bid against Excel. Pl. Motion for Summary Judgment, p. 4. While this may be true, nothing in the conduct of their business dealings was in violation of the contract between the parties. For these reasons, summary judgment must be granted in favor of the defendants on the claim for breach of the Cannelton-Excel Contract.

A separate order will be entered this date in accordance with this opinion.