UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXCEL ENERGY, INC.                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:98CV713-S

CYPRUS AMAX COAL SALES CORPORATION, et al.                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the plaintiff, Excel Energy, Inc., to alter, amend or vacate the court's memorandum opinion and judgment of July 31, 2006 dismissing the action. Upon a review of the record, the court finds neither procedural nor substantive error warranting alteration of the judgment.

This action has been on the docket of this court since November of 1998. Discovery has long since closed. The court agreed to permit the filing of a belated summary judgment motion testing the claims against the defendants, Cyprus Amax Coal Sales Corporation, et al. (collectively "Cyprus"). The plaintiff, Excel Energy, Inc. ("Excel"), contended that Cyprus' motion exceeded the scope of that which was permitted to be filed by the court. However, Excel was on notice of and responded to all of the arguments raised by Cyprus. Indeed, Excel stated in its motion for extension of time and for additional discovery that "[t]he Motion is not limited to the issue of subsidiary liability, but seeks summary judgment on the basis of all potential factual and legal issues." Additionally, the court granted Excel's motion for additional discovery. Excel utilized this additional discovery period, and ultimately filed its responsive brief and its own motion for summary judgment nine months later.

Cyprus moved for summary judgment as to all claims against it. (*See*, Proposed Order, DN 97, attach. 24). Excel also sought summary judgment as to all claims. (*See*, Proposed Order, DN

111, attach. 4).  Excel's cross-motion sought judgment in its favor on liability, after being permitted

to regroup and take additional discovery.  Thus all issues were before the court and were, for the

reasons stated in the memorandum opinion, decided adversely to Excel.

> Excel's principal contention of error is that the court held that

> the Cannelton-Excel Contract granted Excel only an exclusive right to bid Kanawha coal on the Joppa Contract.  It did not grant Excel an exclusive right to supply Kanawha coal to the Joppa plant.  Excel exercised its exclusive right by bidding Kanawha coal. [Cyprus] bid Armstrong coal. [Cyprus] won, and actually supplied Armstrong coal for about two-thirds of the contract requirements.  The fact that [Cyprus] at times substituted Kanawha coal for about one-third of the contract requirements, as it was permitted to do, is not a violation of the Cannelton-Excel Contract because Excel received the benefit of its bargain when it was the only bidder to bid Kanawha coal.

Memorandum Opinion, p. 8.

Excel misapprehends the court's meaning when it urges that the above-quoted passage

equates  the term "presentation" with "bid only."  Excel contends that the court held that Excel did

not have a right to sell Kanawha coal to Lafarge, the owner of the Joppa plant, a non-sensical result.

The court made no such ruling.

> The Cannelton-Excel Contract provided, in pertinent part:

> Cannelton Sales Company is pleased to grant exclusive rights for Cannelton's Kanawha Division coal to Excel Energy, Inc. for presentation to Missouri Portland Cement Plant located at Joppa, Illinois owned by Lafarge Corporation...

Excel was granted an exclusive right to bid Kanawha coal to the Joppa plant, inasmuch as the

agreement granted Excel "exclusive rights for [Kanawha coal] for presentation."   Excel contends

that "[i]f given the ordinary meaning, presentation does not mean just bid.  Moreover...to construe

the contract as a whole, it makes no sense to provide Excel with 'exclusive' rights to bid if the

agreement did not intend to allow Excel to actually sell the [Kanawha] coal to the Joppa facility."

The court's ruling is not at odds with Excel's contention.

The court did not rule that if Excel had won the bid, that it would not have been able to sell

the coal.  The court's ruling made no comment on this point, because Excel did not, in fact, win the

bid.  The only way that Excel could sell Kanawha coal to Joppa was through the newly established bid process.  The Cannelton-Excel Contract granted Excel the exclusive right to present Kanawha coal to Joppa in the hope of making the sale.  As the exclusive bidder of Kanawha coal for the first-quarter contract, it attempted to make the sale, but was unsuccessful.

Excel would read the contract provision as granting it a right to preclude any supply of Kanawha coal to Joppa unless sold by Excel itself.  That is, Excel would seek to prevent all Kanawha coal from reaching the doors of the Joppa plant by virtue of its exclusive right to bid Kanawha coal to Joppa.  To accept Excel's contention would distort and enlarge the right granted to Excel in its contract beyond the scope of the language contained in the Contract.  Further, Excel ignores the evidence of record.  It ignores the context in which the contract was made.  Excel was nearing the end of its long and lucrative contract with the former owners of the Joppa plant.  It had been unsuccessful in obtaining an extension of that agreement with Lafarge.  In the face of having to bid for the business, Excel was able to negotiate an agreement permitting it to be the sole bidder of Kanawha coal, which Excel had already been supplying to the Joppa plant under the earlier agreement.  Excel also disregards the evidence that substitution of similar coal was a common practice in the industry which Excel itself also did.

Excel chose to present Kanawha coal for the first quarter supply agreement.  Excel was, in fact, the sole bidder of Kanawha coal.  However, Excel priced the coal too high and was unsuccessful in making the sale.

Cyprus did not bid Kanawha coal in competition with Excel.  It bid Armstrong coal, with a provision, common in the industry, that it be permitted to substitute coal from other mines, subject to buyer approval.  Excel did not refute the evidence that substitution clauses are common in coal supply agreements and that Excel itself substituted coal from time to time.  Nor did Excel refute the evidence that coal seams in the area produce coal of common specifications.  The court thus

- 3 -

concluded that the evidence failed to support Excel's contention that Cyprus bid Kanawha coal in contravention of the Cannelton-Excel Contract.

Cyprus supplied Armstrong coal for two-thirds of the contract requirements, but substituted Kanawha coal for Armstrong coal for approximately one-third.  The court concluded that the substitution did not contravene  the Cannelton-Excel Contract because Excel was not granted an exclusive right to supply Kanawha coal to the Joppa plant.  Excel would have exclusively supplied Kanawha coal to Joppa if it had won the bid, as its contract enabled it to be the only bidder to present it.  But that scenario is not before us.  Rather we have Excel as an unsuccessful bidder, seeking to hold Cyprus liable for breach of contract for its substitution of Kanawha coal for a portion of the Armstrong coal it bid for the first quarter of 1994.  As noted, such substitutions were shown to be common in the industry.  There has been no evidence offered in support of the argument that substitution of one-third of the supply constitutes a violation of the Contract.  The Cannelton-Excel Contract does not address substitution of coal.  The exclusive right to Kanawha coal for presentation was respected during the bid process.  Thus Excel received the benefit of its bargain.

Further, Cyprus did not breach the Contract when it bid Kanawha coal for the remainder of the year 1994.  Excel chose not to bid.  Had Excel bid, Cyprus' bid of Kanawha coal would clearly have violated the Contract.  However, nothing in the Contract precluded Cyprus from bidding Kanawha coal when Excel declined to exercise its right to be the exclusive bidder of that coal. Again, Excel attempts to expand the actual language of the agreement.  It chose not to bid, yet it urges that it could continue to preclude Cyprus from doing so.  Excel was granted the exclusive right to present Kanawha coal.  However, in choosing not to present it, its exclusive right to do so ceased to be in issue.  Excel has offered no evidence to support its contention that its "exclusive rights for [Kanawha coal] for presentation" was intended to mean that Kanawha coal was to remain in the ground, unsold, in the event that Excel chose not to bid for the Joppa supply contract.  This interpretation, unsupported by any citation to evidence, seeks to improperly expand the plain

meaning of the contract term.  The exclusive rights to the coal were "for presentation."  There is nothing ambiguous about this term.   The evidence in this case establishes that the only "presentation" in question was presentation through Lafarge's bid process for the sale of coal to the Joppa plant.  In the absence of an exercise of the right to be the only bidder of Kanawha coal, nothing precluded Cyprus from bidding the coal itself.

Additionally, as Excel did not bid for the remainder of the 1994 business, it cannot establish that it suffered any injury as a result of Cyprus' bid.

Finally, the court concluded that there was no tortious interference with its business contracts or business relationships.  As noted in the memorandum opinion, there is nothing in the evidence to substantiate the allegation that anything done by Cyprus impacted Excel's decision to price itself out of the running for the first quarter supply.  It is undisputed that Excel could have submitted a competitive bid had it not chosen to add an inordinately large profit for itself onto the price per ton at which it believed it would be purchasing the coal from Cannelton.  Excel has not refuted the evidence that the profit that it sought was far in excess of industry averages, the terms of its expiring agreement notwithstanding.  The court held that "nothing in [Cyprus'] conduct of their business dealings was in violation of the contract between the parties."  It further found that "[i]n light of the fact that [Cyprus] was within its right to submit its proposal, there can be no tortious interference with Excel's hoped for but as yet unrealized future business dealings with Lafarge."  In light of these findings, the claim for breach of the implied covenant of good faith and fair dealing that runs with the contract was also subject to dismissal, though not explicitly stated.

For these reasons, the motion of Excel Energy, Inc. to alter amend or vacate is **DENIED**.


**IT IS SO ORDERED.**