UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXCEL ENERGY, INC.                                                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:98CV-713-S

CYPRUS AMAX COAL SALES CORPORATION, et al.                                DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on remand from the United States Court of Appeals for the Sixth Circuit reversing this court's grant of summary judgment on the breach of contract and breach of the duty of good faith and fair dealing claims of the plaintiff, Excel Energy, Inc.

This action arose from an alleged breach of an exclusive coal supply contract entered into between Cannelton Sales Co.[1] and Excel in March of 1993 (hereinafter the "Cannelton contract"). As explained in the opinion of the 6th Circuit Court of Appeals, No. 06-6467, at p. 3, in November of 1993, Amax, Inc. the ultimate parent company of Cannelton Sales, merged with Cyprus Minerals Co., the ultimate parent company of Cyprus Amax Coal Sales Corporation ("CACSC") and Cyprus Amax Coal Company ("CACC"), the two remaining defendants in the case. The merger of Amax, Inc. into Cyprus Minerals Co. created a new company, Cyprus Amax Minerals Co. *Id.* CACSC and CACC remained separate corporate entities after the merger, as did Cannelton Sales. *Id.* Both before and after the merger, Cyprus Minerals Co. had a wholly owned subsidiary, Cyprus Kanawha Corporation, which owned the Armstrong Creek coal mine. *Id.* One of the effects of the merger was to bring the Armstrong Creek coal mine within the same corporate ownership structure as the

---

[1] Cannelton Sales Co. filed for bankruptcy protection in 2005 and was dismissed from this case. Excel pursued its claims against Cannelton Sales in the bankruptcy court.

Cannelton Kanawha Division mine, the mine which produced the coal that was the subject of the Cannelton contract. *Id*.

The issue the court must address herein is whether CACSC[2] can be held liable for any breach of the Cannelton contract. As noted by the Court of Appeals, these companies were separate corporate entities both before and after the merger of their ultimate parents. The merger simply brought the companies under the surviving ultimate parent, Cyprus Amax Minerals Co.

In *Hazard Coal v. Kentucky West Virginia Gas Co.*, 311 F.3d 733, 739 (6th Cir. 2002), the Court of Appeals stated that

> Under Kentucky law, separate corporate interests, including subsidiaries and affiliates...are separate legal entities and must be recognized and treated as such unless there is some reason to pierce the corporate veil.. *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979)...

Excel does not urge a piercing of the corporate veil, nor has it offered facts which would support such a theory. Excel Response, p. 10 ("...this is not a case about piercing the corporate veil."). Rather, Excel's theory is that the defendants are liable under the Cannelton contract as successors-in-interest to the obligations of Cannelton Sales. For the reasons set forth below, we find that this theory is also without merit.

Excel quotes from *Pearson Ex. Rel. Trent v. National Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002) in setting out the law of successor liability in Kentucky:

> It is generally accepted in Kentucky that a corporation which purchases another corporation does not assume the payment of any debts or liabilities of the corporation which it has purchased. *American Railway, supra.; Conn* [*v. Fales Division of Matthewson Corporation*, 835 F.2d 145 (6th Cir. 1987)]. It is also well settled in Kentucky that when a sale of a corporation is a bona fide transaction, and the selling corporation...receives money to pay its debts or property that may be subjected to the payment of its debts and liabilities, the purchasing corporation will not, in the absence of a contract obligation or fraud, be held responsible for the debts or liabilities of the selling corporation. *American Railway [Express Co. v. Commonwealth,* 228 S.W. 433 (Ky. 1920)] at 437. The only exceptions to the

---

[2]For purposes of this analysis, we will refer to CACSC in this opinion. We need not draw a distinction between CACSC and CACC, as the legal analysis concerning successor liability is applicable to both defendants.

general rule that a purchaser, in the absence of a contract obligation, cannot be held responsible for the debts and liabilities of the selling corporation, are:

(1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities;

(2) where the transaction amounts to a consolidation or merger of the seller and purchaser;

(3) where the purchasing corporation is merely a continuation of the selling corporation; or

(4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Pearson*, 90 S.W.3d at 49.

After the merger, Cannelton Sales continued as a corporate entity. Cannelton Sales was sold by CACC in 1998. Cannelton Sales continued in existence until its bankruptcy in 2005. There has been no allegation that the merger resulted in the depletion or transfer of the assets of Cannelton Sales. There is no dispute that there was no merger of Cannelton Sales into another entity.

Excel notes that after the merger, CACSC, the sales agent for Armstrong Creek coal, began performing the business operations of Cannelton Sales. Excel urges that this evidences that the merger resulted in a "mere continuation" by CACSC of the operations of Cannelton Sales. First, we reiterate that Cannelton Sales was not dissolved nor absorbed by another company. The merger was between the ultimate parents of these surviving independent companies. Further, we have been shown no authority for the proposition that the transfer of day-to-day operational responsibilities from the employees of one viable company to the employees of another results in successor liability in the company who has taken on the work. Successor liability involves corporate entities not workshare arrangements. For successor liability, there must be only one surviving corporate entity. *See, American Railway Express Company v. Commonwealth*, 228 S.W. 433 (Ky. 1920). As Cannelton Sales continued to exist, Excel's invocation of the exceptions to the no liability rule for

merger of a seller into a purchaser, or the mere continuation of the selling corporation are inapplicable under the facts before us.

Excel contends that the defendants expressly assumed the liabilities of Cannelton Sales under the Cannelton contract. This contention is not supported by the evidence.

On December 3, 1993, CACSC sent a letter to Excel stating:

> Per our conversation on December 1, 1993 Cyprus Amax Coal Sales Corporation on behalf of its affiliate, Cannelton Sales Company is pleased to submit the attached proposal to supply coal from its Kanawha Division to Excel Energy, Inc. for resale to Lafarge Corporation's Missouri Portland Cement Plant located at Milepost 95.3 on the Ohio River at Joppa, Illinois pursuant to the letter agreement between Cannelton Sales Company and Excel Energy dated March 24, 1993.

Excel Response, Ex. D. Excel contends that this letter, whereby CACSC offered coal on behalf of Cannelton Sales pursuant to the Cannelton contract [the "letter agreement" referred to therein], evidences that the defendants assumed liability under the Cannelton contract. There is nothing in the record that supports this conclusion. Excel asserts that "the Defendants assumed and continued the operations of Cannelton after the merger and have exercised Cannelton's rights/obligations under the Cannelton Agreement." Excel Response, p. 11. It offers portions of the deposition testimony of Greg Walker, the defendants' corporate representative, in support of this proposition. However, Walker indicated that

> [Cannelton Sales] had business in the past, it had contracts in its name, so it would have continued to have to conduct that business...until the contracts ran out or they were assigned... Walker depo., p. 21.
>
> In some instances contracts may have been assigned to an affiliated entity, just to simplify and collapse the organization, which is typical after a merger, but I can't recall... *Id.*

With respect to whether Cannelton Sales continued conducting business post-merger, Walker stated that

> ...any contracts or agreements that [Cannelton Sales] had in its name would have continued. They didn't get terminated because of a merger. Over time, the sales and marketing activities would have gravitated over to the one [CACSC] entity. Walker depo., p. 46.

There is nothing in the deposition testimony nor in the December 3, 1993 offer letter which indicates an assumption of the Cannelton contract by CACSC. Rather, the letter to Excel specifically stated that the offer was being made *on behalf of* Cannelton Sales and *pursuant to Cannelton Sales' contract* with Excel. Nothing could be more clearly disclosed as an offer by CACSC as an agent for Cannelton Sales, not an offer on CACSC's own behalf. Therefore, Excel's contention that CACSC expressly assumed the contractual obligations of Cannelton Sales is without merit.

Excel fares no better with its contention that the 1994 Sales Representation Agreement evidences CACSC's successor-in-interest liability for Cannelton Sales' obligations under the Cannelton contract.

On January 1, 1994, CACSC entered into a Sales Representation Agreement with Cannelton Industries to act as its exclusive agent. This constituted a termination of Cannelton Sales' ability to represent Cannelton Industries after January 1, 1994. The Cannelton contract did not expire until December 31, 2004. To the extent that Cannelton Sales continued to be obligated under its contract with Excel through the end of 1994, it was precluded in the last year of the agreement from offering Cannelton coal on behalf of Cannelton Industries. However, Excel would have enforceable rights against CACSC only if an express or implied assumption of the obligation to Excel could be established. CACSC was not a party to the Cannelton contract. There is no assumption of this contract in its 1994 representation agreement, and the court has been shown no basis for finding that such an assumption was implied. There is no basis for finding an assumption of Cannelton Sales' prior contractual obligations simply because Cannelton was ousted from its agency relationship with Cannelton Industries in favor of CACSC.

In sum, we conclude that no genuine issue of material fact exists in this matter and the defendants are entitled to judgment as a matter of law. A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S.

Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

We conclude that CACSC did not breach the Cannelton contract by selling Cannelton coal under either of the supply contracts with Lafarge for 1994 as there was no successor-in-interest liability of the defendants for breach of the Cannelton contract between Excel and Cannelton Sales. Additionally, as there was no successor-in-interest liability of the defendants, there was no breach of the implied covenant of good faith and fair dealing which runs with the contract. The covenant of good faith and fair dealing only arises from a contract, and in the absence of a contract to which the defendants were parties, no such covenant applies. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp2d 784, 791 (W.D.Ky. 2001), *citing, Ranier v. Mount Sterling National Bank*, 812 S.W.2d 154, 156 (Ky. 1991).

A separate order will be entered this date in accordance with this opinion.